AO 91 (Rev. 08/09)  Criminal Complaint

AUSA  Michael C. Martin
Special Agent  Grant A. Toth

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.

**Lanardo Deron JOHNSON**

**Robert Demetrius JACKSON**

Case:2:13-mj-30531
Judge: Unassigned,
Filed: 08-30-2013 At 03:20 PM
RE: SEALED MATTER (EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 1, 2010 _____ in the county of _____ Oakland _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. Sections 846 and 841(a)(1) | Conspiracy to Possess with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Grant A. Toth, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

*Judge's signature*

Date: 8/30/2013

City and state: Detroit, Michigan

MARK A. RANDON, United States Magistrate Judge
*Printed name and title*

I, Grant A. Toth, being duly sworn, state the following:

1. I submit this affidavit in support of a complaint charging **Lanardo Deron JOHNSON** and **Robert Demetrius JACKSON** with Conspiracy to Possess with Intent to Distribute Controlled Substances (more specifically, marijuana) in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

2. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") assigned to the Detroit Field Division, which is located in the Eastern District of Michigan and a Deputy Sheriff with the Washtenaw County Sheriff's Office, Michigan. As such, I am an investigative or law enforcement officer of the United States and am authorized to conduct investigations and make arrests for violations of Title 21 of the United States Code. I have been a Task Force Officer with DEA since January of 2010 and a Deputy Sheriff since August 2006. I have received specialized training on the subject of narcotics trafficking and money laundering as Task Force Officer with the DEA and as a Deputy Sheriff with the Washtenaw County Sheriff's Office. I have been personally involved in numerous investigations concerning the possession, manufacture, and distribution as well as methods used to finance drug transactions and launder drug proceeds.

3. I am aware of the following information from numerous sources including but not limited to, my own personal observations and participation in this investigation and my review and analysis of written reports. This affidavit does not contain every fact of the investigation, but rather just those necessary to establish probable cause.

4. Based on my training, experience, and information obtained during this case (including information from the Milford Police Department, Michigan investigative reports and interviews of co-conspirators), I believe that **L. JOHNSON and JACKSON**, both residents of Detroit, were in active participation in the planning, conspiracy and execution of a break-in of a

warehouse which contained a large scale marijuana grow operation on June 1, 2010, in Milford, Michigan. I further believe that the purpose of the robbery was to obtain marijuana for distribution. I base these beliefs on the following:

   a. Milford, Michigan is a lightly populated village in Oakland County that is located approximately 40 miles northwest of Detroit, Michigan.

   b. On June 1, 2010, at approximately 5:00AM, Milford Police Officer Rebecca Rathje, while on routine patrol, located two suspicious vehicles parked in the vicinity of a warehouse located at 3795 Childs Lake Road in Milford, Michigan. Officer Rathje identified the vehicles as a 2005 blue Jeep Cherokee and a white 1996 Chevy pick-up truck. As Officer Rathje approached the vehicles in her marked patrol car the occupants in the white Chevy Pick-up truck sped away from the area. Officer Rathje approached the jeep and discovered that it was unoccupied and the passenger side door was left open. In the rear of the jeep the officer found a wheel chair.

   c. In addition, Officer Rathje observed an open security gate that surrounded a warehouse located at 3795 Childs Lake Road. The warehouse was located across the street from where the blue jeep was parked and was left unattended.

   d. Earlier that evening, during routine patrol, Officer Rathje had checked the security gate at the warehouse and verified that it was closed. Officer Rathje requested additional police officers to investigate a possible break-in at the warehouse.

   e. Upon arrival to the area, responding officers discovered that the mechanism to the security gate had been tampered with. Officers entered the premises of the

warehouse and further discovered suspected marijuana plants lying on the paved parking area of the warehouse. Officers also discovered a large garbage container filled with suspected marijuana on the sidewalk near the back door of the warehouse. Officers discovered a rear door of the warehouse, marked Suite A, propped open with a large amount of suspected marijuana plants visible in and around the entrance of the door. When officers entered Suite A of the warehouse to conduct a search of the building for suspects, they located a large indoor marijuana grow operation. Officers observed horticulture lights, temperature control equipment, fertilizer and several suspected marijuana plants, located in different areas of Suite A. While police continued to search the building they observed a large hole in the roof of the building.

f. Officers searching the area outside of the warehouse discovered an abandoned maroon Ford mini-van parked in the driveway of a private residence across the street from the warehouse. Inside the minivan were 155 marijuana plants.

g. A K-9 track unit began a track from the minivan in a westerly direction into a heavily wood area behind the private residence. The dog located a new black Nike Tennis shoe on top of the grass in the woods. The dog continued to track for over a mile and found the other Nike shoe, but eventually lost the track near a swamp. Across the street from the swamp is Childs Lake Estates, an extensive collection of small homes. Officers patrolled Childs Lake Estates and found Rufus Morton on one of the residential streets located in the community. Morton's clothes were wet and had grass on them.

h. Officers also located and arrested **JACKSON** on a road just outside Childs Lake Estates. Like Morton, **JACKSON** was also from Detroit and had clothes that were wet with grass on them.

i. At approximately 5:30 a.m. on June 1, 2010, a police officer in a patrol car observed a suspicious vehicle parked in a driveway of a private residence not far from the warehouse. The vehicle was sitting with its engine running and its lights on. The officer observed the driveway of the residence and saw several very nice newer vehicles parked in the driveway with the garage door closed.

j. After the officer passed the suspicious vehicle, the vehicle almost immediately turned out of the driveway and started following the officer's patrol car. The officer was able to turn off and get behind the vehicle, at which time the officer ran the vehicle's license plate and determined that it was registered to an address in Detroit.

k. The officer stopped the vehicle to identify the occupants. The driver of the vehicle was a woman and the passenger a man. The woman provided the officer with the name "Crystal Winston." The officer placed the woman in the back of his patrol car while he verified her identity. The officer ran Crystal Winston through a law enforcement database using the spelling provided by the woman, along with other variations. The results were negative.

l. The woman told the officer that she and the male passenger were on the way to her "sister's baby's daddy's house," but could not provide a reason for traveling there in the early morning hours. The woman said she was parked in the driveway because she was lost. When asked what address she was going to, the

    woman said the address was on "Traditional" and that it was "around here." The officer checked his mapping system and found that the only street with the name "Traditional" in the area was in an industrial complex with no residential addresses on it.

m. The officer asked the male passenger for his identity. The man identified himself as **LANARDO JOHNSON**. **JOHNSON** told the officer that he and the woman were on their way to pick up his daughter at a friend's house, but could not provide a reason why he would be doing so in the early morning hours. **JOHNSON** also identified the house as being on "Traditional." The officer also found that **JOHNSON** is paralyzed from the waste down, immobile, and used a wheel chair.

n. The woman and **JOHNSON** were taken to a police station where the woman was subsequently identified as Sequiea Lynkoya Winston.

5. On January 14, 2013, Task Force Officer Grant Toth and Special Agent Justin Holton conducted an interview of an individual who was arrested in close proximity to the warehouse in the early morning hours of June 1, 2010. This interview was conducted in the presence of an Assistant United State Attorney and the individual's attorney. During the interview, the individual stated that during the late evening of May 30, 2010, or early morning of June 1, 2010, the individual attended a private residence in Detroit, Michigan where several co-conspirators where present, including **JOHNSON**. The meeting was to discuss breaking into the warehouse in Milford, Michigan and to recruit additional subjects to assist in said crime. The individual also revealed that the content of the warehouse was known to be marijuana, and this information was divulged to other co-conspirators during the meeting at the private residence in

Detroit, Michigan. The individual also stated that it was discussed during the meeting that if any money was located inside of the warehouse that the co-conspirator would keep the money and that the marijuana from the warehouse would be split evenly between all co-conspirators. The individual stated after all of the plans were made, two vehicles (including the individual's vehicle) departed the private residence in Detroit, Michigan and were driven from Detroit to the warehouse in Milford, Michigan during the early morning hours of June 1, 2010. The individual stated that **JOHNSON** and other co-conspirators were in the individual's vehicle, when they departed from Detroit, Michigan to Milford, Michigan. The individual stated that once he/she arrived at the warehouse with **JOHNSON** and the other co-conspirators that **JACKSON** arrived in the maroon Ford mini-van and gained entry into the warehouse through the metal roof. The individual also stated that **JACKSON** was the operator of the maroon Ford mini-van, containing the 155 marijuana plants.

6. Based on the information contained in this complaint, I believe that probable cause exits that **Lanardo Deron JOHNSON** and **Robert Demetrius JACKSON** conspired with other individuals to possess with the intent to distribute controlled substances, namely marijuana, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

Grant A. Toth, Task Force Officer
Drug Enforcement Administration

Subscribed to and sworn before me.
On this 30th day of August, 2013.

Honorable Mark A. Randon
United States Magistrate Judge
Eastern District of Michigan